(No. 36665.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JAMES J. D'ANTONIO, Plaintiff in Error.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

GEORGE R. BIEBER, HERBERT BARSY, and MYER H. GLADSTONE, all of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, James J. D'Antonio, together with one Steve Tomares, was indicted for burglary. After a bench trial in the criminal court of Cook County, Tomares was found not guilty, and the defendant was found guilty. He was sentenced to the penitentiary for a term of not less than three years nor more than eight years, and he prosecutes this writ of error contending that the proof did not establish his guilt beyond a reasonable doubt.

On Sunday afternoon, May 15, 1960, the Lane Bryant store in Glencoe was burglarized, and a large number of mink stoles was taken. A filling station attendant saw a man taking the furs from the store, and reported to police that the burglars were leaving the scene in a late model Pontiac. A wild chase through Winnetka, Kenilworth, and Wilmette ensued, which ended when the Pontiac crashed into a fence as it attempted to make a turn off Hibbard Road to avoid entrapment between two police cars. Three men fled from the car. They escaped the search of police in the immediate vicinity of the crash. Approximately ten minutes later two police officers saw a man crossing Skokie Highway about one to one and one-half city blocks west and south of the crash. The defendant was arrested while he was making a phone call in a drug store at Edens Plaza, a shopping center about one block south of where the man crossed Skokie Highway, approximately fifteen minutes after the three men were seen running from the getaway car.

Otis Kennedy was a porter at the Lane Bryant store. On

the day before the burglary his attention was attracted to two men who first stood outside the store for about three minutes before one of them entered. Kennedy followed him into the store and saw him walk over to the case containing the furs and then walk out. Kennedy testified that his attention was attracted to this man initially because he had big ears. A day or two after the burglary Kennedy picked out a picture of defendant from a group of photos shown to him by police, and he identified D'Antonio at the trial as the man he followed into the store.

Geraldine Williams was a cashier at the Lane Bryant store. On the day before the burglary she, too, had seen a man walk into the store, look around at the fur case and walk out. She watched him for thirty to forty-five seconds. She was not at that time waiting on a customer, nor were there any customers in her part of the store. On the night of the burglary, Miss Williams viewed defendant and identified him as the man who had been in the store the day before. She also identified him at the trial.

Two police officers who had taken part in the pursuit of the getaway car after the burglary identified the defendant as its driver. Officer Sebben of Glencoe, received notice of the burglary by radio, and then saw a 1960 Pontiac approaching him. He pulled his squad car slightly across the center of the two-lane road and signalled the Pontiac to stop. It slowed down somewhat, as though to stop, but then accelerated around Sebben's car, its right wheels jolting over the curb. Sebben identified the defendant as the driver of the Pontiac, and testified that he was able to see the occupants of the car as it approached and pulled around him. Later that day, after the defendant was arrested, he took him from the Wilmette to the Glencoe police station.

Officer Currie of Wilmette saw the Pontiac approaching him on Hibbard Road at 70 to 80 miles an hour. He said that he turned his police car so that it blocked a little more than one-half the road, got out of his car, ran around it to

the side from which the Pontiac was approaching and aimed his revolver at the driver's face. The occupants of the car ducked down out of his sight as the car went off the road and around him at about seventy miles an hour. Currie saw defendant later the same day, after his arrest, and he identified defendant at the trial as being the driver of the car.

Two persons identified the defendant as being one of the men who fled from the Pontiac after it crashed. Ivan Bielenberg was in his yard across the street to the north of where the car crashed. He saw three men run from the car, across a part of his yard, and behind his house. Bielenberg viewed defendant fifteen minutes to half an hour after his arrest, and testified at the trial that defendant was the man who had run from the driver's side of the Pontiac.

Mrs. Alfred Swinyard testified that from her yard she saw three men run from the Pontiac and behind the houses across the street from her. She then saw a man appear from behind the house directly across the street, stand for a moment as a police car drove by, and then run toward her. She fled into her home as the man ran by the house and through her back yard. She testified that she "thought" that the defendant was that man.

Officer Yohe of Wilmette drove the police car that closed in on the Pontiac from the south just before it turned off Hibbard Road and crashed. He testified that he was 40 or 50 yards away, that the driver got out of the car and stood for two or three seconds with his hand on the side of the car before he ran south after the other two men. He testified that the driver wore a blue shirt with a stripe down each sleeve.

Officers Hanskat of Winnetka and Currie of Wilmette were in close pursuit of the Pontiac when it crashed. They were searching the area on foot when both of them saw a man cross Skokie Highway toward Edens Plaza. The man was carrying a blue sweater in his hand and was wearing a blue sweater-type T-shirt. Hanskat testified that when he

first saw this man he didn't pay much attention, but after he had talked to the occupants of a car parked on Skokie Highway he stopped a passing police car and drove to Edens Plaza. There he arrested the defendant who was in a phone booth. The defendant was wearing a blue sweater-type shirt and carrying a long-sleeved sweater of the same color. Officer Hanskat testified that when the defendant was arrested he first said he was a resident of Skokie and then, when his driver's license showed a Chicago address, he denied that he had said that he was a resident of Skokie, but he said that he was visiting friends there.

The defendant testified that on Saturday, May 14, 1960, he spent the entire afternoon with his brother at the races and did not enter the Lane Bryant store and look at the fur case on that afternoon. He further testified that on the day of the burglary he and his wife and two small sons were driven by a friend in the friend's automobile from the defendant's home in Chicago to Wilmette to look at a house that his friend thought the defendant might want to buy or rent. When they reached Lake Avenue in Wilmette, defendant wanted to make a phone call to his brother-in-law with whose family the defendant's daughter had spent the night. Defendant entered the drug store at Edens Plaza to make his call. He testified that he had no change, and bought a tooth brush and tooth paste in order to get change to make the phone call. He had the package containing these items when he was arrested in the phone booth. His testimony was corroborated by his brother, his brother-in-law, his wife, and the friend who said that he drove the defendant to Wilmette. The defendant denied that at the time of his arrest he made the statements attributed to him by Officer Hanskat, and testified that the officers had refused to let him tell his wife, who was in his friend's car parked nearby, what was happening.

The defendant points to many asserted defects, improbabilities and discrepancies in the prosecution's case. The

State did not call the filling station attendant to identify D'Antonio or Tomares. D'Antonio called him as a witness, but he did not identify D'Antonio as one of the two men he saw removing the furs from the Lane Bryant store. Kennedy testified that his attention was first called to the defendant because of his big ears, but no other witness testified that there was anything unusual about defendant's ears. Neither Kennedy nor Miss Williams was able to describe any other person who had been in the Lane Bryant store on May 14.

With respect to his identification by officers Sebben and Currie the defendant points out that their identification had to be made through the reflection on the slanting, curved windshield of the Pontiac, and he emphasizes the very brief intervals that they had for observation. He points out, too, that Officer Hanskat, who was parked on a side road about forty feet from the Pontiac when it stopped for a stop sign, was unable to identify any of the occupants, although he had four or five seconds in which to observe them before he pulled out in pursuit. Currie testified that his vision was not impeded by reflection from the windshield, and that the road was shaded by trees at the point where he encountered the car. But Currie made his identification while the car approached and passed him at terrific speed. And Currie paid no attention whatever to the man he saw crossing Skokie wearing a blue T-shirt and carrying a blue sweater. No one identified the defendant as the man who had crossed Skokie.

The identification of Bielenberg is attacked because he asserted that he could identify all three of the men who ran through his yard, although they did not run directly toward him and for a part of the way they were partially obscured by a hedge. It may be noted that the trial judge depreciated the testimony of this witness because he, too, doubted his ability to identify all three of the running men. Mrs. Swin-

yard said only that she "thought" that the defendant was the man who ran toward her and through her yard.

Defendants also call attention to the testimony of Officer Yohe of Wilmette, who saw the driver leave the Pontiac and testified that he wore a blue sweater with white stripes. He had a better opportunity to observe the driver of the car than any other witness. No other witness mentioned a stripe on the sweater and Officer Yohe testified that the driver of the Pontiac ran south, while all other witnesses testified that all three men ran northwest.

We have carefully considered the record. The lurking doubts that stem from the discrepancies in the testimony of the witnesses, and in the case of some of them, the discrepancies between their identifications at the trial and their conduct at the time of the crime, can not be dispelled. We hold, therefore, that the defendant's guilt was not established beyond a reasonable doubt. The judgment of the criminal court of Cook County must be reversed.

*Judgment reversed.*